UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BENJAMIN RETTIG,

    Plaintiff,

v.

UNKNOWN TENNYSON, et al.,

    Defendants.
_____/

Case No. 2:22-cv-208

Hon. Hala Y. Jarbou

## ORDER

Plaintiff Benjamin Rettig brings this action against various corrections officers who work for the Michigan Department of Corrections. On April 4, 2024, the magistrate judge issued a report and recommendation ("R&R"), recommending that the Court grant Defendants' motion for summary judgment, dismiss Plaintiff's federal claims, and decline to exercise supplemental jurisdiction over Plaintiff's claims arising under state law. (R&R, ECF No. 39.) Before the Court are Plaintiff's objections to the R&R. (Pl.'s Objs., ECF No. 40.)

Under Rule 72 of the Federal Rules of Civil Procedure,

> the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to. The district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions.

Fed. R. Civ. P. 72(b)(3).

Plaintiff's complaint arises from two incidents in which officers used force on him, one occurring on January 26, 2021, and the other occurring on January 30, 2021. Plaintiff asserts that he does not object to the R&R with respect to the second incident. (Pl.'s Objs. 3.)

Video of the first incident shows that officers took Plaintiff out and away from his cell and then another officer went inside Plaintiff's cell and threw some items out into the hallway. Within minutes, Officers Neun and Tennyson brought Plaintiff back down the hall to a spot near the doorway of his cell. At the time, Plaintiff's wrists were secured behind his back in restraints that were attached to a tether. Officer Neun held the tether while walking behind Plaintiff. When Plaintiff arrived at the door to his cell, he tried to lunge inside, pulling on the tether. Neun pulled back on the tether with two hands as Plaintiff struggled to move into his cell. Tennyson grabbed the tether to assist Neun. Neun then grabbed Plaintiff by the arm as Tennyson grabbed Plaintiff's shoulders, forcing Plaintiff to the floor with Tennyson's body ending up on top of Plaintiff. After Plaintiff hit the floor, Tennyson put a hand on Plaintiff's head, pushing it to the floor as Plaintiff kicked and struggled until Neun restrained Plaintiff's legs. Plaintiff sustained injuries to his knee, face, and jaw. He claims that the officers used excessive force on him in violation of the Eighth Amendment. The magistrate judge concluded otherwise after reviewing videos of the incident.

In his objections, Plaintiff first argues that the magistrate judge "glossed over" the fact that the officers used "subterfuge" to gain entry to his cell. (Pl.'s Objs. 3.) They told Plaintiff that they needed to take his picture but the real reason for taking him out of his cell was to perform a cell search. That act of "subterfuge" has minimal relevance to Plaintiff's excessive force claim. As Plaintiff acknowledges, prison cell searches are common. It matters not that Defendants lied to Plaintiff in order to entice him out of his cell to perform the search. What matters is that, apart from putting Plaintiff in restraints, Defendants did not use any force on Plaintiff until after he tried to pull away from Neun. Any lie a few minutes earlier does not make it more likely that Tennyson forced Plaintiff to the ground "maliciously and sadistically to cause harm." *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

2

Plaintiff further argues that there was no need to throw him to the floor and press his face against the floor given that his hands were restrained behind his back and officers were holding him by a tether.  Plaintiff contends that he posed little threat to any officers.  The video clearly shows otherwise.  The purpose of the tether was to keep Plaintiff from escaping the officers' control, yet he attempted to do just that while charging toward an officer who was still inside his cell.  Two officers had to pull on Plaintiff's tether to prevent him from engaging and potentially attacking the officer in his cell.  Even with his hands restrained, Plaintiff could still tackle, kick, or spit[1] on another individual.  Indeed, after Tennyson forced him to the ground, Plaintiff fought against the officers' control by kicking his legs, which put himself and the officers at risk of injury due to his continuing struggle.  In these circumstances, the officers' uses of force to restore order and control were justified.

Next, Plaintiff contends that the extent of his injuries is sufficient to demonstrate that Defendants used excessive force.  However, the magistrate judge correctly noted that the extent of injury, while relevant, is not dispositive of whether an Eighth Amendment violation occurred.  *See Cordell v. McKinney*, 759 F.3d 573, 580–81 (6th Cir. 2014) ("While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred.").  That is especially true here, where there is video evidence showing how the officers applied force to Plaintiff and the circumstances justifying that force.  In other words, this is not a situation in which a jury would be left to infer the use of excessive force based solely on evidence of the extent of injury sustained.  Instead, the video shows Tennyson moving quickly to bring Plaintiff under control by forcing him to the

---

[1] The incident occurred in January 2021, during the COVID-19 pandemic.  The officers were wearing cloth face masks; Plaintiff was not wearing one.

3

ground and keeping him there.  Although that force caused injury to Plaintiff, and arguably satisfies the objective component of an excessive force claim, no reasonable jury could conclude that the force was excessive under the subjective component, which requires force used "maliciously and sadistically to cause harm," rather than "in a good-faith effort to maintain or restore discipline[.]" *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (quoting *Hudson v. McMillian*, 503 U.S. 1, 9 (1992)).

Plaintiff argues that there is a question of fact as to whether his leg movements on the floor were attempts to resist or were a response to his face being pushed onto the floor.  But either way, Plaintiff was resisting control, permitting some force to restrain him.  Under the circumstances, Defendants' use of force to restrain those movements was not excessive.

Plaintiff contends that his case is like *Cordell*, in which the Court of Appeals held that "any reasonable official would know that ramming a handcuffed and controlled prisoner headfirst into a concrete wall is an unreasonable method of regaining control of a prisoner in a hallway occupied only by other jail officials." *Cordell*, 759 F.3d at 588.  Plaintiff's case is similar to *Cordell* in that Plaintiff was handcuffed in a hallway occupied by more than one prison officer when Defendants used force on him.  However, the Court of Appeals has observed that one important distinguishing factor present in *Cordell* is the fact that "Cordell was always under control." *Burnett v. Griffith*, 33 F.4th 907, 912 (6th Cir. 2022).  Cordell's only act of resistance was turning his head to face another officer.  *Id.*  In contrast, Plaintiff was not under control before Tennyson brought him to the ground; rather, Plaintiff was actively pulling against the tether held by Neun and Tennyson.  In that way, his case is more like *Burnett*, in which a plaintiff with his hands cuffed behind his back attempted to pull away from the officer escorting him to his cell.  *Id.* at 909.  Although another officer was present nearby, the officer holding the cuffs forced the plaintiff to the floor "with significant force," causing the plaintiff to lose consciousness.  *Id.*  The court in *Burnett*

4

distinguished *Cordell*, noting that the plaintiff "created an immediate exigency by pulling away from [the officer] in an attempt to break free from [the officer's] grasp." *Id.* at 912.  "The act of breaking away from an officer's control is a far greater show of resistance than the act of turning toward an officer."  *Id.*  Similarly, Plaintiff's attempt to break free from Neun's control justified Tennyson's use of force to push Plaintiff to the ground in order to bring him back under control. Thus, *Cordell* is distinguishable.

In summary, the Court is not persuaded that there is any error in the magistrate judge's reasoning or recommendation.  Accordingly,

**IT IS ORDERED** that the R&R (ECF No. 39) is **APPROVED** and **ADOPTED** as the opinion of the Court.

**IT IS FURTHER ORDERED** that Defendants' motion for summary judgment (ECF No. 30) is **GRANTED** for the reasons set forth in R&R.

**IT IS FURTHER ORDERED** that Plaintiff's federal claims are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Plaintiff's claims arising under state law are **DISMISSED WITHOUT PREJUDICE** because the Court declines to exercise supplemental jurisdiction over them.

**IT IS FURTHER ORDERED** that the Court declines to certify that an appeal would not be taken in good faith.  *See* 28 U.S.C. § 1915(a)(3).

The Court will enter a judgment in accordance with this Order.

Dated: May 22, 2024

/s/ Hala Y. Jarbou
HALA Y. JARBOU
CHIEF UNITED STATES DISTRICT JUDGE